IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TREY CASSIDY,<br><br>Defendant. | 15-po-05079-JTJ<br>VIOLATIONS:<br>4595327<br>4595152<br>Location Code: M13<br><br>**ORDER DENYING MOTION TO DISMISS/SUPPRESS** |

## I. INTRODUCTION

Defendant Trey Cassidy has filed motion to dismiss driving under the influence and resisting arrest charges against him or to suppress evidence that the United States may use against him if the charges are not dismissed and the matter proceeds to trial. (Doc. 10.) Mr. Cassidy raises the following issues: (A) whether the traffic stop violated his rights under the Fourth Amendment and Equal Protection Clauses of the United States Constitution; (B) whether his arrest was based on probable cause; (C) whether the breathalyzer test administered to him was properly conducted; (D) whether he, as the user of a motor vehicle, had the right to be informed of his right to obtain an independent blood test after he was arrested; and (E) whether he should have been "*Mirandized*" prior to undergoing the

1

Intoxilyzer test.

Mr. Cassidy's motion will be denied.  Because the parties are familiar with the facts of this case, the undersigned will restate them only as necessary to the analysis below.

## II. ANALYSIS

### A. Traffic Stop

Mr. Cassidy argues that the traffic stop was improper because Ranger Scholtz did not have particularized suspicion to justify the stop.  He also argues the stop was racially motivated.

The Fourth Amendment applies to traffic stops and requires a showing of particularized suspicion to initiate a traffic stop.  *United States v. Cortez*, 449 U.S. 411, 417 (1981) (citations omitted).  "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Id*.  In making this determination, "the whole picture" must be taken into account.  *Id.*  "The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible." *Id.* at 418.  First, there must be objective data from which an experienced officer can make inferences.  *Id.*  Second, there must be a resulting suspicion that the individual is or has been engaged in wrongdoing.  *Id.*

Here, the objective data comes from Ranger Scholtz's observations of Mr. Cassidy before the stop. Ranger Scholtz first encountered Mr. Cassidy at the Motor Inn General Store where he observed Mr. Cassidy lose his balance and step backwards while standing in line to purchase beer. During the same encounter, Ranger Scholtz engaged Mr. Cassidy in conversation and observed Mr. Cassidy's watery and bloodshot eyes. Ranger Scholtz then observed Mr. Cassidy drive a Ford F-350 and exit the store parking lot traveling in the wrong direction. Ranger Scholtz followed the F-350 and observed it leave the roadway to the right on two occasions.

Based upon these observations, Ranger Scholtz formed the suspicion that Mr. Cassidy may have been operating the F-350 while intoxicated and initiated the traffic stop to further investigate. The Court determines that particularized suspicion existed. Therefore, Ranger Scholtz's traffic stop to further investigate whether Mr. Cassidy was intoxicated was justified, and the stop was lawful.

Mr. Cassidy argues it is common for drivers in Glacier National Park to "constantly and abruptly cross[] the fog line in order to better take in the wildlife and the scenery," and Ranger Scholtz only decided to pull him over because he was Native American. (Doc. 10-1 at 5.) Although Mr. Cassidy is an American Indian,

he presented no evidence that his race played any role in Ranger Scholtz's decision to perform the traffic stop.

### B. Probable Cause

Mr. Cassidy argues that his arrest was illegal because there was no probable cause that he had committed a crime. The United States argues that probable cause existed, justifying his arrest.

Warrantless arrests must be supported by probable cause—a reasonable belief that a crime has been committed and that the person being arrested committed the crime. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause is a "practical, non-technical conception" under the facts and circumstances of a particular action. *Illinois v. Gates*, 462 U.S. 213, 231 (1983). While probable cause is a fluid concept "incapable of precise definition," the "substance" of the definition is a "reasonable ground for belief of guilt." *Id.* Probable cause is "from the standpoint of an objectively reasonable police officer." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

The facts and circumstances surrounding Mr. Cassidy's arrest establish the following: he had been drinking; he lost his balance while standing in line to buy beer; he exited the store's parking lot in the wrong direction; he was driving a Ford F-350; while he was driving the F-350, the passenger side tires crossed the fog line

4

on two occasions; the Horizontal Gaze Nystagmus (HGN) test returned five of six clues; the walk and turn test returned three of eight clues; and the one leg stand test returned two of four clues. From the standpoint of an objectively reasonable officer, these facts and circumstances provide reasonable grounds for the belief that Mr. Cassidy was guilty of driving under the influence. Probable cause therefore existed, and Mr. Cassidy's arrest was lawful.

Mr. Cassidy argues that: the results of the HGN are unreliable because he had a pre-existing head injury; the results of the walk and turn test are unreliable because there was no line upon which to walk, the surface upon which he was walking was uneven, and it was windy; and that the results of the one leg stand test are unreliable because it was windy. While these deficits may well preclude a finding of guilt beyond a reasonable doubt based upon these test results alone, they do not defeat a finding of probable cause, which is a much lower standard than guilt beyond a reasonable doubt.

### C. Intoxilyzer

Mr. Cassidy argues that the Intoxilyzer was not properly administered because there was no 25 minute deprivation period between the two tests. However, there is no 25 minute deprivation period between each test. Rather, there is an initial deprivation period, the 25 minute deprivation period before the first of

the two tests is given. *See* (Doc. 11-3, Montana Operator's Guide to the Intoxilyzer 8000). Mr. Cassidy was afforded the required 25 minute deprivation period before the fist test was administered. Therefore, the Court determines that the Intoxilyzer was properly administered to Mr. Cassidy.

### D.   Right to Independent Blood Test

Mr. Cassidy is charged with violating 26 C.F.R. § 4.23(a)(2), which prohibits a person from operating or being in actual physical control of a motor vehicle when "the alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath." 26 C.F.R. § 4.23(c) addresses "tests" that may be conducted to determine the operator's alcohol concentration. Pursuant to 26 C.F.R. § 4.23(c)(1), the "tests" in question are those "at the request or direction of *an authorized person who has probable cause to believe* that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section." (Emphasis added.) 26 C.F.R. § 4.23 does not address whether the accused operator has a right to obtain a test independent of the test requested by the "authorized person."

Montana law provides the accused with the constitutional due process right to obtain exculpatory evidence. *State v. Swanson*, 722 P.2d 1155, 1157 (Mont.

6

1986). Consistent with this right, Montana law requires that the arresting officer inform a person accused of driving under the influence of his right to obtain a test independent from the one the officer requests, regardless of whether the accused consents to the test designated by the officer. *State v. Strand*, 951 P.2d 552, 553 (Mont. 1997) (overruled on other grounds by *Montana v. Minkoff*, 42 P.3d 223 (Mont. 2002)).

26 C.F.R. § 4.2(a) provides that "unless specifically addressed by the regulations in this chapter, traffic and use of vehicles within a park area are governed by State law." 26 C.F.R. § 4.23 does not specifically address the motor vehicle user's right to have the arresting officer inform him of his right to obtain a test independent from the one the "authorized person" requests when being investigated for driving under the influence. However, the Court does not read 26 C.F.R. § 4.2 as broadly as does Mr. Cassidy. Instead, the Court concludes "the regulations . . . make substantive state traffic laws applicable in national parks in the absence of federal regulations," but "state procedures in drunk driving cases do not establish substantive traffic offenses." *U.S. v. Friend*, 736 F.Supp. 1134, 1136 (N.D. Ga. 1990). Montana's law requiring the arresting officer to notify a motor vehicle operator of his right to an independent blood test after being arrested is not a law regulating traffic or use of a motor and as such does not fall within the

7

parameters of 26 C.F.R. § 4.2(a). Rather, this Montana law is one establishing a procedural right of a person who has been arrested and is being investigated for driving under the influence of alcohol. Federal procedural law governs the charges against Mr. Cassidy, and there is no federal constitutional right to an independent blood test. Therefore, the results of Intoxilyzer test that was administered to Mr. Cassidy will not be suppressed.

The Court notes that the Intoxilyzer test results do not by themselves establish that Mr. Cassidy was operating the F-350 with a blood alcohol concentration of .08 or greater. The results of the Intoxilyzer test establish Mr. Cassidy's blood alcohol concentration at 20:14 and 20:17, approximately one and one-half hours after he last operated the Ford F-350. *See* Docs. 1-2, 11 (Exhibit A).

### E. Miranda

Mr. Cassidy also mentions that he was "not even informed of his rights under *Miranda*, much less of his due process right to obtain an independent blood test." (Doc. 10-1 at 13.) The Court assumes that Mr. Cassidy is arguing that he should have been provided a *Miranda* warning before he underwent the Intoxilyzer test. *Miranda v. Arizona*, 384 U.S. 444 (1966), provides that the statement of a person in custody in response to police interrogation may not be used against the

person unless he is first informed of certain rights. *Miranda* does not apply to breath tests administered to an accused as part of a driving under the influence investigation. *Schmerger v. Cal.*, 384 U.S. 757, 764 (1966).

### III. CONCLUSION

Ranger Scholtz had particularized suspicion for the traffic stop and probable cause for the arrest. He was not required to inform Mr. Cassidy of his right to an independent blood test. Therefore, the citation for driving under the influence will not be dismissed, and the results of the Intoxilyzer test will not be suppressed. The charge of resisting a government employee likewise will not be dismissed.

Based on the forgoing, the undersigned issues the following:

### ORDER

Defendant Trey Cassidy's Motion to Suppress/Dismiss (Doc. 10) is **DENIED**.

DATED this 12th day of January, 2016.

_____
John Johnston
United States Magistrate Judge